HOPKINS· v. HOPKINS.

(Filed February 24, 1903.)

1. EVIDENCE—*Cross-examination—Witnesses.*

When a witness relates a part of a conversation of another witness for the purpose of contradicting the latter, it is competent to show on cross-examination that in the same conversation he made a further statement consistent with his testimony.

2. ARGUMENTS OF COUNSEL—*Improper Remarks of Counsel—
Divorce.*

In an action for divorce it is improper for counsel to exhibit
the baby of the defendant to the jury and state that if the
divorce should be granted it would disgrace and bastardize
the child.

3. ARGUMENTS OF COUNSEL—*Improper Remarks of Counsel—
Divorce.*

In an action for divorce it is improper for counsel in the argument of the case to state that witnesses of plaintiff had been
bribed, there being no evidence of this fact.

4. EVIDENCE—*Hearsay Evidence—Divorce.*

In an action for divorce mere neighborhood rumors of improper
relations between defendant and her alleged paramour are
incompetent.

ACTION by R. B. Hopkins against Julia A. Hopkins, heard
by Judge *Francis D. Winston* and a jury, at Spring Term,
1902, of the Superior Court of PAMLICO County. From a
judgment for the defendant, the plaintiff appealed.

*D. L. Ward,* for the plaintiff.
*L. J. Moore,* for the defendant.

WALKER, J.   This is an action brought by the plaintiff
against defendant for divorce, on the ground of adultery committed with one J. T. Daniels.   The plaintiff introduced evidence tending to show that illicit relations had existed for

some time between the said parties. One of his witnesses, B. O. Rice, testified as follows: "I knew the plaintiff and defendant, have frequently seen them riding together; they worked together in the field; they rode together when Hopkins (plaintiff) was away at the light-house, but not when he was on shore." The defendant introduced as a witness Emil Ireland, who testified: "I had a conversation with the witness, B. O. Rice, at Parkin's Point, in which he stated he did not know anything against Mrs. Hopkins." The plaintiff's counsel, on cross-examination, proposed to ask this witness "if B. O. Rice did not state in the same conversation that if Tom Daniels did not have improper relations with Mrs. Hopkins it was his own fault, and he missed a good chance." The question was objected to by the defendant, the objection was sustained by the Court, and the plaintiff excepted.

We think the Court erred in excluding what the plaintiff proposed to prove. The testimony of B. O. Rice, while very slight, as proof of illicit intercourse between the parties, was permitted without objection to be considered by the jury in connection with the other facts and circumstances already in evidence, in order to establish the charge of adultery made against the defendant, and it was competent for this purpose. This being so, when the defendant attempted, by the testimony of her witness, Emil Ireland, to contradict the plaintiff's witness, B. O. Rice, it was surely competent for the plaintiff to support and strengthen the latter's evidence by showing that, in the same conversation with Emil Ireland, he had made a statement entirely consistent with his testimony at the trial. This would be so, if the statement of B. O. Rice, proposed to be elicited, had been made in a separate and distinct conversation with Emil Ireland or any one else, as it would tend to corroborate the plaintiff's witness, B. O. Rice.

The evidence was competent also upon the familiar princi-

ple that where one of the parties introduces evidence as to part of a conversation, the other party is entitled to have the whole conversation detailed to the jury, as the part already in evidence may be explained and qualified by the other part of the conversation. If this was not permitted to be done, the evidence would be fragmentary and misleading, and the very truth of the matter might be suppressed. The strict enforcement of this rule is demanded in the interest of a fair and impartial trial, and that equal and exact justice may be administered. *Paine v. Roberts,* 82 N. C., 451; *Roberts v. Roberts,* 85 N. C., 9.

The defendant's counsel, in his address to the jury, was permitted, over the objection of the plaintiff, to take the little child of the defendant in his arms and exhibit it to the jury, and, as is stated in the case, he "urged upon the jury not to find the defendant guilty as charged, because it would ruin her character and would disgrace and bastardize the child, and counsel repeatedly urged this view upon the jury"; and it is further stated that the defendant's counsel, in his address to the jury, after objection had been made by the plaintiff in apt time, "repeatedly and persistently charged that plaintiff had hired and bribed the witnesses to swear falsely in the cause, although there was no evidence to support the charge." In the case of *McLamb v. Railroad,* 122 N. C., 862, it was said by this Court: "Much allowance must be made for the zeal of counsel in a hotly contested case, especially when the colloquy is mutual; and indeed much latitude is necessarily given in the argument of a case when there is conflicting evidence, but counsel should be careful not to abuse their high prerogative, and when the remarks are improper in themselves, or are not warranted by the evidence, and are calculated to mislead or prejudice the jury, it is the duty of the Court to interfere." To the same effect is the case of *Perry v. Railroad,* 128 N. C., 471. The language of the Court in

*Coble v. Coble,* 79 N. C., 590; 28 Am. Rep., 338, is quite as strong and forcible in stating the rule that should govern in such cases.   In that case, Bynum J., said: "Some allowance should be made for the zeal of counsel and the heat of debate, but, here, the language and meaning of counsel were to humiliate and degrade the defendant in the eyes of the 'jury and bystanders—a defendant who had not been impeached by witnesses, by his answer to the complaint or by his conduct of the defence, as it appears of record.   Such an assault is no part of the privilege of counsel, and was well calculated to influence the verdict of the jury.   The defendant's counsel interposed his objections in apt time and upon the instant, but they met with no response from the Court, and for this error there must be a *venire de novo.*"

The rule, which is so well stated in the extracts we have just made from the decisions of the Court, and which has frequently been commended to the Judges for their guidance in the trial of cases, is directly applicable to the facts as they appear in this record.   The plaintiff was entitled to a fair and impartial consideration of the case by the jury, and it was his unquestioned right to have all extraneous matter excluded therefrom, especially if it was calculated, as it was here, to seriously impair this right and to prejudice him in the minds of the jurors.   What the counsel said about the child was nothing but an appeal to the sympathetic feelings of the jury, and was not justified in any view that we can take of the testimony.   The jury had nothing to do with the consequences an adverse verdict would entail upon the defendant, nor with the effect of such a verdict upon the status of the child.   This introduced into the case an immaterial issue, which was calculated to divert the minds of the jury from the true and only question involved; that is, the adulterous intercourse of the defendant with her alleged paramour, and its evident tendency was to prejudice the plaintiff.

The case of *State v. Woodruff,* 67 N. C., 89, cited by the defendant's counsel, is not an authority in his favor. It has no application whatever to the facts in this case. In that case, there was an issue of bastardy, and the child was in its mother's arms when she testified, and was exhibited to the jury, without any objection from the defendant, for the purpose of proving the resemblance of the child to its putative father, and the comments of counsel related to this resemblance. It is needless to undertake to show the difference between that case and this, as a bare statement of the facts is quite sufficient for that purpose.

The defendant's counsel was also permitted, as we have already stated, to charge "repeatedly and persistently" that the plaintiff's witness had been bribed by him to testify falsely in his behalf. The case on appeal was prepared by plaintiff's counsel and served upon defendant's counsel and accepted by him as correct. The Judge did not settle the case upon disagreement of counsel, but the counsel themselves agreed upon it; and the counsel for the defendant thereby admits that there was no evidence of this charge made by him and emphasized, we have no doubt, with his usual force and eloquence.

Counsel should not be permitted to comment upon matter of which there is no evidence. It tends to confuse the jurors, and, as we have said in discussing a former exception, to take their minds away from the true issue being tried, and in a case like this to give play to their passions and prejudices instead of their calm and deliberate judgment in passing upon the testimony.

It has recently been held by this Court that where comments by counsel substantially like those made in this case, though not involving so grave an accusation, were permitted to be made by counsel after objection, and the Court failed to interfere and stop the counsel or to properly caution the jury

in the charge, a new trial will be granted for the error thus committed.    *State v. Tuten,* 131 N. C., 701.

The evidence as to rumors in the neighborhood of improper relations between defendant and J. T. Daniels, which the plaintiff proposed to introduce, was properly excluded by the Court, but the errors committed in the respects we have indicated, entitle the plaintiff to have the issues in the case again submitted to a jury.

PER CURIAM.    New trial.